IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DANNIE COLLOPY,**

                          **Case No. 2:17-cv-1138**

      **Petitioner,**            **Judge Algenon L. Marbley**
                          **Magistrate Judge Chelsey M. Vascura**

      **v.**

**WARDEN, NOBLE**
**CORRECTIONAL INSTITUTION,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this Petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Motion to Dismiss,

Petitioner's Motion in Opposition, and the exhibits of the parties. For the reasons that follow,

the Magistrate Judge **RECOMMENDS** that Respondent's Motion to Dismiss (ECF No. 6) be

**GRANTED** and that this action be **DISMISSED**.

**Facts and Procedural History**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of

the case as follows:

> Between July 1, 2014 and April 7, 2015, Collopy fondled his 13–
> year-old adopted daughter's breast under her clothes at least five
> times. Collopy had his stepdaughter touch his penis at least five
> times. Collopy put his stepdaughter's hand on his penis at least five
> times.
>
> Collopy digitally penetrated her at least eight times. These acts
> occurred at the family residence.
>
> On May 18, 2015, the Grand Jury filed an Indictment charging
> Collopy with eight counts of Rape, in violation of R.C.
> 2907.02(A)(2), felonies of the first degree, and five counts of

Gross Sexual Imposition, in violation of R.C. 2907.05(A)(1), felonies of the fourth degree.

Collopy was arraigned, assigned counsel and pled not guilty on May 26, 2015. Collopy filed a Demand for Discovery and Request for Bill of Particulars on June 4, 2015. Discovery was completed on June 5, 2015 and the Bill of Particulars was filed January 19, 2016.

Collopy waived his right to a speedy trial on June 18, 2015. A pre-trial conference was held January 25, 2016. Collopy also filed a written waiver of his right to a jury trial. Collopy entered written pleas of guilty to each count in the Indictment, and entered guilty pleas in open court. The trial court appointed H.A. Beazel, Psy.D., Clinical and Forensic Psychologist to evaluate Collopy and file reports with the court. Sentencing was deferred pending the completion of the pre-sentence investigation report.

A sentencing hearing took place on June 6, 2016.

After consideration of the reports of Dr. Beazel, the presentence investigation report, the statements of counsel and Collopy, letters in support of Collopy, and the statement of the victim, the trial court sentenced Collopy to ten years on each count of Rape, to be served consecutively to each other, and 12 months imprisonment on each of the Gross Sexual Imposition counts to be served concurrently to each other and concurrently to the Rape counts. Collopy received an aggregate sentence of 80 years mandatory imprisonment.

Assignment of Error

Counsel for Collopy has filed a Motion to Withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493(1967) asserting one potential assignment of error:

"I. THE TRIAL COURT'S SENTENCE IS CONTRARY TO LAW."

*State v. Collopy,* No. 2016CA0010, 2017 WL 1374169, at *1 (Ohio App. 5th Dist. April 13, 2017).  On April 13, 2017, the appellate court affirmed the judgment of the trial court. *Id*.  On June 8, 2017, Petitioner filed a Notice of Appeal and Motion for Delayed Appeal in the Ohio Supreme Court.  (ECF No. 6-1, PAGEID# 142-44.)  The Ohio Supreme Court granted

Petitioner's motion for a delayed appeal.  (PAGEID# 163.)  However, Petitioner thereafter filed

a motion to voluntarily dismiss the appeal as fruitless.  (PAGEID# 164-65.)  On August 14,

2017, the Ohio Supreme Court granted the motion, and dismissed the appeal.  *State v. Collopy*,

150 Ohio St.3d 1416 (2017); (PAGEID# 166.)  On July 3, 2017, Petitioner filed an application

for reopening of the appeal pursuant to Ohio Appellate Rule 26(B).  (PAGEID# 167.)  On

August 14, 2017, the appellate court denied the Rule 26(B) application.  (PAGEID# 182.)  On

December 6, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  *State

v. Collopy*, 151 Ohio St.3d 1457 (2017); (PAGEID# 205.)

On December 28, 2017, Petitioner filed this Petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254.  As his sole ground for federal habeas corpus relief, Petitioner asserts that

he was denied the effective assistance of appellate counsel because his attorney failed to raise on

appeal a claim that his guilty plea was not knowing, intelligent, or voluntary because the trial

court failed to advise him of the community notification provisions of O.R.C. § 2950.11 and

residential restrictions.  It is the position of the Respondent that this claim is procedurally

defaulted and without merit.[1]

**Standard of Review**

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the

Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case.  The United

State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court" and emphasized that courts must

not "lightly conclude that a State's criminal justice system has experienced the 'extreme

---

[1] It is the position of the Respondent that Petitioner's claim that his guilty plea was not knowing, intelligent, or voluntary is waived due to his failure to raise the claim on direct appeal; however, in his Motion in Opposition, Petitioner indicates that he is raising a claim of the denial of the effective assistance of appellate counsel.  (See ECF No. 7.)

malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16

(2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559

U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-

court rulings, and demands that state court decisions be given the benefit of the doubt." (internal

quotation marks, citations, and footnote omitted)).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and

forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated

on the merits in State court proceedings" unless the state court decision either

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be

correct:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct. The applicant shall have the burden of
> rebutting the presumption of correctness by clear and convincing
> evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision

was contrary to, or involved an unreasonable application of, clearly established federal law as

determined by the Supreme Court, or based on an unreasonable determination of the facts in light

of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013)

4

(citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v. Robinson*, 134 S. Ct. 513 (2013). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L.Ed. 2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed. 2d 389.

*Id*. at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

**Merits**

Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that his guilty plea was not knowing, intelligent, or voluntary, in view of the trial court's failure to advise him of the community notification requirements of O.R.C. § 2950.11.[2] The state appellate court rejected this claim, reasoning in relevant part as follows:

---

[2] O.R.C. § 2950.11 provides in relevant part as follows:

> (A) Regardless of when the sexually oriented offense or child-victim oriented offense was committed, if a person is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to a sexually oriented offense or a child-victim oriented offense or a person is or has been adjudicated a delinquent child for committing a sexually oriented offense or a child-victim oriented offense and is classified a juvenile offender registrant or is an out-of-state juvenile offender

registrant based on that adjudication, and if the offender or delinquent child is in any category specified in division (F)(1)(a), (b), or (c) of this section, the sheriff with whom the offender or delinquent child has most recently registered under section 2950.04, 2950.041, or 2950.05 of the Revised Code and the sheriff to whom the offender or delinquent child most recently sent a notice of intent to reside under section 2950.04 or 2950.041 of the Revised Code, within the period of time specified in division (C) of this section, shall provide a written notice containing the information set forth in division (B) of this section to all of the persons described in divisions (A)(1) to (10) of this section. If the sheriff has sent a notice to the persons described in those divisions as a result of receiving a notice of intent to reside and if the offender or delinquent child registers a residence address that is the same residence address described in the notice of intent to reside, the sheriff is not required to send an additional notice when the offender or delinquent child registers. The sheriff shall provide the notice to all of the following persons:

(1)(a) Any occupant of each residential unit that is located within one thousand feet of the offender's or delinquent child's residential premises, that is located within the county served by the sheriff, and that is not located in a multi-unit building. Division (D)(3) of this section applies regarding notices required under this division.

(b) If the offender or delinquent child resides in a multi-unit building, any occupant of each residential unit that is located in that multi-unit building and that shares a common hallway with the offender or delinquent child. For purposes of this division, an occupant's unit shares a common hallway with the offender or delinquent child if the entrance door into the occupant's unit is located on the same floor and opens into the same hallway as the entrance door to the unit the offender or delinquent child occupies. Division (D)(3) of this section applies regarding notices required under this division.

(c) The building manager, or the person the building owner or condominium unit owners association authorizes to exercise management and control, of each multi-unit building that is located within one thousand feet of the offender's or delinquent child's residential premises, including a multi-unit building in which the offender or delinquent child resides, and that is located within the county served by the sheriff. In addition to notifying the building manager or the person authorized to exercise management and control in the multi-unit building under this division, the sheriff shall post a copy of the notice prominently in each common entryway in the building and any other location in the building the sheriff determines appropriate. The manager or person exercising management and control of the building shall permit the sheriff to post copies of the notice under this division as the sheriff determines appropriate. In lieu of posting copies of the notice as described in this division, a sheriff may provide notice to all occupants of the multi-unit building by mail or personal contact; if the sheriff so

notifies all the occupants, the sheriff is not required to post copies of the notice in the common entryways to the building. Division (D)(3) of this section applies regarding notices required under this division.

(d) All additional persons who are within any category of neighbors of the offender or delinquent child that the attorney general by rule adopted under section 2950.13 of the Revised Code requires to be provided the notice and who reside within the county served by the sheriff;

(2) The executive director of the public children services agency that has jurisdiction within the specified geographical notification area and that is located within the county served by the sheriff;

(3)(a) The superintendent of each board of education of a school district that has schools within the specified geographical notification area and that is located within the county served by the sheriff;

(b) The principal of the school within the specified geographical notification area and within the county served by the sheriff that the delinquent child attends;

(c) If the delinquent child attends a school outside of the specified geographical notification area or outside of the school district where the delinquent child resides, the superintendent of the board of education of a school district that governs the school that the delinquent child attends and the principal of the school that the delinquent child attends.

(4)(a) The appointing or hiring officer of each chartered nonpublic school located within the specified geographical notification area and within the county served by the sheriff or of each other school located within the specified geographical notification area and within the county served by the sheriff and that is not operated by a board of education described in division (A)(3) of this section;

(b) Regardless of the location of the school, the appointing or hiring officer of a chartered nonpublic school that the delinquent child attends.

(5) The director, head teacher, elementary principal, or site administrator of each preschool program governed by Chapter 3301. of the Revised Code that is located within the specified geographical notification area and within the county served by the sheriff;

(6) The administrator of each child day-care center or type A family day-care home that is located within the specified geographical notification area and within the county served by the sheriff, each holder of a license to operate a type B family day-care home that is located within the specified geographical notification area and within the county served by the sheriff. As used in this division, "child

day-care center," "type A family day-care home," and "type B family day-care home" have the same meanings as in section 5104.01 of the Revised Code.

(7) The president or other chief administrative officer of each institution of higher education, as defined in section 2907.03 of the Revised Code, that is located within the specified geographical notification area and within the county served by the sheriff, and the chief law enforcement officer of the state university law enforcement agency or campus police department established under section 3345.04 or 1713.50 of the Revised Code, if any, that serves that institution;

(8) The sheriff of each county that includes any portion of the specified geographical notification area;

(9) If the offender or delinquent child resides within the county served by the sheriff, the chief of police, marshal, or other chief law enforcement officer of the municipal corporation in which the offender or delinquent child resides or, if the offender or delinquent child resides in an unincorporated area, the constable or chief of the police department or police district police force of the township in which the offender or delinquent child resides;

(10) Volunteer organizations in which contact with minors or other vulnerable individuals might occur or any organization, company, or individual who requests notification as provided in division (J) of this section.

(B) The notice required under division (A) of this section shall include all of the following information regarding the subject offender or delinquent child:

(1) The offender's or delinquent child's name;

(2) The address or addresses of the offender's or public registry-qualified juvenile offender registrant's residence, school, institution of higher education, or place of employment, as applicable, or the residence address or addresses of a delinquent child who is not a public registry-qualified juvenile offender registrant;

(3) The sexually oriented offense or child-victim oriented offense of which the offender was convicted, to which the offender pleaded guilty, or for which the child was adjudicated a delinquent child;

(4) A statement that identifies the category specified in division (F)(1)(a), (b), or (c) of this section that includes the offender or delinquent child and that subjects the offender or delinquent child to this section;

(5) The offender's or delinquent child's photograph.

would be subject to community notification as a tier III sex offender. Appellant contends that the trial court failed to inform him of the consequences of his tier III sex offender classification, namely that such classification would include community notification requirements. Appellant's Motion at 3.

A review of the record in this case including the plea hearing and written acknowledgement signed by Appellant outlining his reporting requirements establishes that the trial court sustainably [sic] complied with all of the Crim R. 11 requirements. At the change of plea hearing the following exchange[] took place:

THE COURT: Now, let me ask you this. Are you aware that you are going to be a registered sex offender?

THE DEFENDANT: (The defendant nodded.) Yes[.]

THE COURT: I believe you are going to have a lifetime reporting requirement. Is that correct, Mr. Hall?

MR. HALL: That is accurate. Tier III.

THE COURT: Tier III?

MR. HALL: Yes, sir.

THE COURT: You will be a Tier III offender, which means you have a lifetime reporting requirement and you will have in-person verification every 90 days. That's also one of your responsibilities after you are released from prison. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Knowing and understanding the penalties involved and your requirement to report as a sex offender upon your release, all right, do you still, at this time, wish to voluntarily enter a plea of guilty to all of those charges; do you still wish to do that?

THE DEFENDANT: Yes, sir.

Plea Hearing, Jan. 25, 2016 at 6-7.

Accordingly, we find that the issue asserted by appellant in his first proposed assignment of error raises "no genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal***" *State v. Smith*, 95 Ohio St.3d 127, 2002-Ohio-1753.

Judgment Entry (ECF No. 6-1, PAGEID# 185-86.)

      "In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . .

. to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective

assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011)

(citation omitted). The United States Supreme Court set forth the legal principles governing

claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984).

*Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that

his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687;

*Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S.

Ct. 680 (2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that

counsel's representation fell below an objective standard of reasonableness.'" *Poole v.

MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536

(6th Cir. 2011) (internal quotation marks omitted); citing *Strickland*, 466 U.S. at 687), *cert.

denied*, 135 S. Ct. 122 (2014). To make such a showing, a petitioner must overcome the "strong

[ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 687. "To

avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v.

Haviland,* 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland,* 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins*,
> 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); Burger
> v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)....
> Counsel's failure to raise an issue on appeal amounts to ineffective
> assistance only if a reasonable probability exists that inclusion of
> the issue would have changed the result of the appeal. *Id*. ..... The
> attorney need not advance every argument, regardless of merit,

10

urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary,* No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D. Ohio March 6, 2013). Factors to be considered in determining whether a defendant has been denied the effective assistance of appellate counsel include the following:

(1) Were the omitted issues "significant and obvious"?

(2) Was there arguably contrary authority on the omitted issues?

(3) Were the omitted issues clearly stronger than those presented?

(4) Were the omitted issues objected to at trial?

(5) Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999) (citations omitted).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under

§ 2254(d)." *Harrington*, 562 U.S. at 105. The Court observed that, while "'[s]urmounting

*Strickland's* high bar is never . . . easy,' . . ., [e]stablishing that a state court's application of

*Strickland* was unreasonable under § 2254(d) is even more difficult." *Id*. (quoting *Padilla v.*

*Kentucky*, 559 U.S. 356, 371 (2010), and citing *Strickland*, 466 U.S. at 689). The Supreme Court

instructed that the standards created under *Strickland* and § 2254(d) are both "'highly

deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted).

Thus, when a federal habeas court reviews a state court's determination regarding an ineffective

assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable.

The question is whether there is any reasonable argument that counsel satisfied *Strickland's*

deferential standard." *Id.*

Additionally, because a criminal defendant waives numerous constitutional rights when

he pleads guilty, the plea must be entered into knowingly and voluntarily in order to be

constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and

remains whether the plea represents a voluntary and intelligent choice among the alternative

courses of action open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988)

(quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, the Court

must look at the totality of circumstances surrounding the plea. *Id*. A criminal defendant's

solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426

U.S. 637, 648 (1976). A criminal defendant cannot successfully challenge the voluntariness of

his plea merely on the basis that he was motivated to plead guilty. *Brady v. United States*, 397

U.S. 742, 750 (1970). Moreover, "[a] criminal defendant 'need only be [made] aware of the

direct consequences of the plea' and a trial court 'is under no constitutional obligation to inform

the defendant of all the possible collateral consequences of the plea.'" *Rose v. Bauman*, No.

12

2:17-cv-10836, 2018 WL 534490, at *5 (E.D. Mich. Jan. 24, 2018) (citing *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994)).  Further, "it is well-settled under Sixth Circuit precedents" that a criminal defendant's classification as a sexual predator "is merely a 'collateral consequence' of his guilty plea, which does not affect the validity of his plea or conviction."  *Doty v. Warden*, *Toledo Corr. Inst.*, No. 1:12-cv-239, 2013 WL 429100, at *7 (S.D. Ohio Feb. 1, 2013) (citing *Leslie v. Randle*, 296 F.3d 518, 521-23 (6th Cir. 2002); *United States v. Cottle*, 355 F. App'x 18, 20-21 (6th Cir. 2009); *Tatum v. Warden, Allen Corr. Inst.*, No. 1:07cv355, 2008 WL 1766790, at *1, *5 (S.D. Ohio Apr.11, 2008)).  Moreover, as noted by the state appellate court, the sentencing transcript indicates that the trial court advised Petitioner at the time of his guilty plea that he would be subject to a lifetime reporting requirement as a sexual offender.  Petitioner indicated that he understood.  (ECF No. 6-1, PAGEID# 211-12.)  Petitioner does not allege, and the record does not reflect, that the guilty plea colloquy was otherwise inadequate.

Therefore, Petitioner has failed to establish that the state appellate court's denial of his claim of ineffective assistance of appellate counsel warrants relief.

**Recommended Disposition**

For the reasons set forth above, it is **RECOMMENDED** that Respondent's Motion to Dismiss (ECF No. 6) be **GRANTED** and that this action be **DISMISSED**.

**Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations

to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*_____
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE